**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3018
_____

In re: THE COMPLAINT AND PETITION OF ARTHUR A. DEGEORGE., as
owner or managing owner of a certain 2014 Steiger Craft boat, IN A
COMPLAINT AND PETITION FOR EXONERATION FROM OR
LIMITATION OF LIABILITY

JOHN MARINCOLA,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-20-cv-05594)
District Judge:  Honorable Michael A. Shipp
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 5, 2023
_____

Before:  SHWARTZ, CHUNG, MCKEE, <u>Circuit Judges</u>

(Filed: December 6, 2023)
_____

OPINION[*]
_____

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

CHUNG, Circuit Judge.

Appellant John Marincola ("Marincola") appeals the District Court's grant of summary judgment to Appellees Arthur DeGeorge ("DeGeorge") and Borough of Belmar, New Jersey ("Belmar").  Because the District Court lacked jurisdiction over this case, we will vacate and remand with directions that the District Court dismiss DeGeorge's exoneration from liability claim and with further directions to remand Marincola's claims to state court.

I.      BACKGROUND[1]

This case arises from injuries Marincola suffered attending a fishing trip with friends.  DeGeorge invited a group of friends, including Marincola, to go fishing on his private boat.  The boat was docked at the Belmar Marina operated by Belmar.  When DeGeorge arrived at his boat, he observed that a fishing line was strung between the cleats on the dock.  When Marincola arrived, however, he did not notice the fishing line.  As Marincola boarded the docked boat, he fell from the dock into the boat and injured his knee.  At the time of his fall, he did not know what caused it.  Despite Marincola's fall, the group (including Marincola) continued with its fishing trip.  Hours later, upon returning, Marincola noticed the fishing line and concluded that he must have tripped on it when he fell earlier in the day.

Marincola sued Belmar and DeGeorge in the Monmouth County Superior Court,

---

[1]      Because we write for the parties, we recite only facts pertinent to our decision.

2

alleging that their negligence led to the injuries he sustained from falling. He brought claims against Belmar under the New Jersey Tort Claims Act for negligent hiring and negligent training, and against DeGeorge for common law negligence. DeGeorge then filed an action in the United States District Court for the District of New Jersey, seeking exoneration from liability under the Exoneration and Limitation of Liability Act ("Limitation Act").[2] Marincola invoked the District Court's ancillary jurisdiction over his state claims and consolidated the two actions against Belmar and DeGeorge in federal court. Belmar and DeGeorge moved for summary judgment on all claims asserted. The District Court granted both motions in full.

Marincola timely appealed.

II.     DISCUSSION

Though neither the District Court nor the parties in their original briefing addressed jurisdiction, we "have an independent duty to ascertain not only our own appellate jurisdiction but also the subject-matter jurisdiction of the district court."

---

[2]     The Limitation Act is set forth in the Maritime Liability section of the United States Code. It provides that "the liability of the owner of a vessel for any claim, debt, or liability ... shall not exceed the value of the vessel." 46 U.S.C. § 30523. A party may move for exoneration or limitation of liability under this act. See Complaint of Consolidation Coal Co., 123 F.3d 126, 132 (3d Cir. 1997) ("A shipowner facing potential liability can file a complaint for limitation of liability in a federal district court[.]"). Pursuing limitation or exoneration does not itself confer federal admiralty jurisdiction, and the parties do not argue that it does. See, e.g., MLC Fishing, Inc. v. Velez, 667 F.3d 140, 143 (2d Cir. 2011) (explaining that "[e]very Court of Appeals to reach the question … has concluded that the Limitation Act does not provide an independent foundation for federal admiralty jurisdiction," and collecting cases).

3

Bumberger v. Ins. Co. of N. Am., 952 F.2d 764, 766 (3d Cir. 1991); see also, Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

Title 28, Section 1333, of the United States Code codifies the Constitution's conferral of jurisdiction over "all Cases of admiralty and maritime Jurisdiction" to federal courts. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1). "The fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." Hargus v. Ferocious & Impetuous, LLC, 840 F.3d 133, 136 (3d Cir. 2016) (quoting Sisson v. Ruby, 497 U.S. 358, 367 (1990)) (quotation marks omitted). To determine whether a federal court has admiralty and maritime jurisdiction over a tort claim, a party must satisfy two tests: the location test and the connection test. Id. (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). Federal admiralty jurisdiction exists only "when the location test and both prongs of the connection test are satisfied." Id.

We focus here on the connection test which calls for a two-part inquiry. Id. First, courts "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Id. (internal quotation marks and citation omitted). "Second, we must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (internal quotation marks and citation omitted).

At step one, a court should "focus[] on the direct and immediate cause of the injuries suffered, rather than the alleged negligence underlying the suit[,]" when

determining whether an incident is of the kind that might disrupt maritime commerce. Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 249 (2d Cir. 2014). Maritime commerce is disrupted when an incident (1) alters the waterway itself or (2) obstructs the free passage of commercial ships on the waterway or their access to docks. See, e.g., Grubart, 513 U.S. at 539 (vessel caused damage that could have caused "disruption in the water course itself" or temporary "restrictions on the navigational use of the waterway"); Sisson, 497 U.S. at 362 (fire on a noncommercial vessel "[could have] spread to nearby commercial vessels or ma[d]e the marina inaccessible to such vessels"). Maritime commerce is also disrupted by incidents that distract the crew from safely operating the vessel when arriving or departing from the dock and that create potential for crashes with other vessels or docks. See In re Christopher Columbus, LLC, 872 F.3d 130, 136-37 (3d Cir. 2017) (fight amongst passengers while boat was docking could have distracted crew and captain, raising risk of a crash with other vessels or pier).

DeGeorge and Belmar assert that the District Court had jurisdiction pursuant to 28 U.S.C. § 1333. DeGeorge specifically argues that federal admiralty jurisdiction was "properly conferred given that the injury occurred in navigable waters and [Marincola]'s claim is confined to the strictures of the Limitation Act." DeGeorge Br. at 8. We conclude that jurisdiction is lacking for failure to meet the first prong of the connection test.[3]

---

[3] We also note that the location test may not be satisfied here. The location test "is

In urging this Court to find jurisdiction here, Belmar argues that the type of incident in this case "has the potential to distract the captain or crew during docking, boarding and departure, depending on the degree of the injury a person sustains … [and] could delay the departure time of the vessel." App. Dkt. No. 41, at 4 (Belmar Jurisdiction Response Letter). Similarly, DeGeorge argues that "the placement of [the] monofilament line … could disrupt maritime commerce in myriad ways." App. Dkt. No. 40, at 5 (DeGeorge Jurisdiction Response Letter). He argues that the line "could interfere with [the crew's ability to] secure the vessel" when docking, "cause someone exiting the vessel to … fall into the water while docking" or "create distraction and or panic by the captain" if it caused a passenger to trip while the captain was departing from the dock. Id. at 5-6.

We conclude, for the purpose of examining jurisdiction, that the alleged direct and immediate cause of Marincola's injuries was his tripping and falling while boarding a

---

satisfied if 'the tort occurred on navigable water' or the 'injury suffered on land was caused by a vessel on navigable water.'" Hargus, 840 F.3d at 136 (quoting Grubart, 513 U.S. at 534). On the one hand, Marincola's injury was not "caused by a vessel on navigable water" because the fishing line he claims caused him to trip was only attached to the dock. See, e.g., MLC Fishing, Inc., 667 F.3d at 142 ("[I]t is well established that piers and docks are ... deemed extensions of land for purposes of determining admiralty jurisdiction, and so injuries inflicted to or on them are ... not compensable under the maritime law.") (internal quotation marks, alterations, and citation omitted). On the other hand, Marincola was injured when he fell into the boat which was on navigable waters. In any event, we need not address this "difficult question of where the underlying tort (or torts) here occurred" because the connection test is not satisfied. Tandon, 752 F.3d at 249; see also Hargus, 840 F.3d at 136.

6

docked vessel.[4] An individual falling onto a docked boat while boarding from a stationary dock "presents no realistic threat to maritime commerce," <u>Tandon</u>, 752 F.3d at 250, and thus does not provide a basis for admiralty jurisdiction. Furthermore, Belmar cites no support for the argument that a trivial delay of a commercial vessel in arriving or departing from a dock "disrupts" maritime commerce, and we have found none. Further, the examples found in case law and hypothesized by DeGeorge only create sufficient dangers to maritime commerce when a vessel is in the process of docking or undocking. <u>See</u> <u>In re Christopher Columbus, LLC</u>, 872 F.3d at 136 (explaining how "an altercation between passengers on a boat *in the process of docking* has the potential to disrupt maritime commerce" (emphasis added)); <u>see also</u>, <u>Tandon</u>, 752 F.3d at 250 (noting that "a fistfight on a permanent dock does not endanger the safety of the dock itself or risk a collision between that dock and nearby vessels"). That potential for disruption is simply not present here, a situation involving a temporary distraction to the crew of a stationary vessel secured to a permanent dock.

Accordingly, we conclude that the incident here is not of the type that might disrupt maritime commerce and that the first prong of the connection test is not satisfied. The District Court, as well as this Court, thus lack federal question jurisdiction under 28 U.S.C. § 1333(1). <u>See</u> <u>Grubart</u>, 513 U.S. at 534.

---

[4] We note that, though the parties dispute whether Marincola tripped over the fishing line, for the purpose of determining whether jurisdiction exists, we look to Marincola's allegations. <u>See, e.g.,</u> <u>Tandon</u>, 752 F.3d at 248 (examining the tort as "alleged").

III.    <u>CONCLUSION</u>

For the foregoing reasons, we will vacate the District Court's order with direction that the District Court dismiss the Limitation Act claim and remand the negligence claims to state court.